UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| COOK PRODUCTIONS, LLC, | Civil No. 16-00637 HG-KSC |
| | (Copyright) |
| Plaintiff, | |
| vs. | FINDINGS AND |
| | RECOMMENDATION TO |
| STANLEY SZERLIP, | PARTIALLY GRANT PLAINTIFF'S |
| | MOTION FOR DEFAULT |
| Defendant. | JUDGMENT AGAINST |
| | DEFENDANT STANLEY SZERLIP |

<u>FINDINGS AND RECOMMENDATION TO PARTIALLY GRANT
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT STANLEY SZERLIP</u>

Plaintiff COOK PRODUCTIONS, LLC's (hereafter: "Plaintiff"), Motion for Default Judgment Against Defendant STANLEY SZERLIP ("Defendant"), filed herein on June 8, 2017, [Doc. #48], having come on for hearing before the Court, the Honorable Kevin S.C. Chang, Magistrate Judge presiding, with Kerry S. Culpepper appearing for Plaintiff and there being no appearance and no written submission by or on behalf of the Defendant, the Court, after full consideration of Plaintiff's motion and the entire record herein, makes the following Findings and Recommendation:

1

This is an action for permanent injunctive relief and damages against Defendant for copyright infringement in violation of the United States Copyright Act, 17 U.S.C. 101 §§ et. seq.

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

Plaintiff commenced this action by filing its Complaint on December 2, 2016 against eight Doe individuals including the Defendant. [Doc. #1].

Thereafter, Plaintiff ascertained the identity of the individual who illegally downloaded and distributed the Plaintiff's copyrighted movie *Mr. Church* (hereafter: the "Work") by subpoenaing Defendant's Internet Service Provider, Hawaiian Telcom. [Doc. #24 ¶¶ 8, 21].

Plaintiff's Complaint was then amended to specifically identify Defendant. [Id.] Plaintiff personally served the Defendant with a summons on May 4, 2017 and filed the Proof of Service. [Doc. #38]. Based upon the service date of May 4, 2017, Defendant's answer was due on May 25, 2017.

When Defendant failed to appear, plead, or otherwise defend, Plaintiff filed a Rule 55(a) request for the entry of default on May 26, 2017 [Doc. # 43]. The request was promptly granted by the Court. [Doc. # 44].

Plaintiff is a California limited liability company that owns the copyright for the motion picture in the Work under registration number PA 2-002-851. [Doc. # 24, ¶ 29].

Plaintiff filed this action after discovering that Defendant had illegally downloaded and copied the Work using the BitTorrent protocol. [Id. ¶¶ 8 and 21].

BitTorrent is an interactive "peer-to-peer" ("P2P") file transfer technology protocol whereby users can: (a) make media files (including entire movies) stored on each user's computer available for copying by other users or peers; (b) search for files that are stored on other users' computers; and (c) transfer exact copies of those files from one computer to another via the Internet. [Id. ¶¶ 19 20-25].

Defendant is the Internet subscriber that was assigned and had the use of the IP address 72.234.118.117 on October 19, 2016.

Using a BitTorrent client application, Defendant illegally republished and distributed copies of the Plaintiff's copyrighted Work through the use of the unique hash number SHA1: FB9EAB34A9CC31AABC73B4F560D4B6C49F3C856A to an unknown number of other individuals over the Internet. Particularly, Defendant illegally downloaded the Work on October 19, 2016 3:13 am UTC. [Doc. #24-1]. It is undisputed that his infringement was willful and intentional.

Defendant distributed copies of his illegitimate copy of the Work at least three times. [Doc. #24-4, item#6]. This contention is also undisputed.

Defendant's actions contributed to the Work being among the most ten pirated movies of the week of October 17, 2016, which was or very near the week of Defendant's infringements. [Doc. #48-1].

The Complaint alleges claims for copyright infringements, in violation of the United States Copyright Act, 17 U.S.C. § 101 et. seq., for distributing copies of Plaintiff's Work.

A plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006). Plaintiff has pled facts to establish the necessary elements of copyright infringements.

Because Defendant has chosen to default instead of defending, he has admitted the truth of the allegations asserted in the Amended Complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). While the Court may conduct a hearing to determine damages, *See* Fed. R. Civ. P. 55(b)(2), the Court can rely on evidence submitted by Plaintiff. *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).

When evaluating whether to grant a judgment by default, the Court should consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club Peggy, Inc.*, 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012).

All of these factors support the conclusion that Plaintiff is entitled to a default judgment.

**1. The possibility of prejudice to Plaintiff**

Plaintiff would certainly be prejudiced if the Court declines to enter default judgment, for it would leave Plaintiff without any remedy against Defendant, who has failed to even show up and contest this dispute. "If Plaintiff['s] motion for default judgment is not granted, Plaintiff[] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Despite the fact that Defendant doesn't deny that Plaintiff is entitled to an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against him, Plaintiff would be left unable to seek damages or even to prevent Defendant from brazenly

continuing to infringe Plaintiff's copyright. Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

**2&3. The merits of Plaintiff's substantive claim and the sufficiency of Amended Complaint**

Plaintiff has adequately pled its claim for copyright infringement. In its Amended Complaint, Plaintiff alleged that it owns the copyright for the Work and attached a valid Certificate of Copyright Registration issued by the Register of Copyrights. [Doc. #24, at ¶27; Doc. #20-5]. Moreover, because the factual allegations of the Amended Complaint are deemed true, Plaintiff has conclusively established that Defendant infringed upon Plaintiff's copyright and that his infringement was both knowingly and willful. [Doc. #24, at ¶¶ 25, 57-58, 64, 71].

**4. The sum of money at stake in the action**

The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

**5. The possibility of a dispute concerning the material facts**

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendant's default, this Court must take the factual allegations asserted in the Amended Complaint as true. *See TeleVideo Sys., Inc. v. Heidenthal, supra*, 826 F.2d at 917–18. Moreover, Defendant has not made any attempt to contest those allegations (or for that matter, even bothered to appear).

6. **Whether the default was due to excusable neglect**

Defendant's default is not the result of excusable neglect. Plaintiff first sent a Waiver of Service packet to the addresses of Defendant on March 28, 2017. [Doc. #41-1 ¶5]. After receiving no reply, the Defendant was personally served with a Summons and the Amended Complaint on May 4, 2017. [Doc. #30]. Plaintiff also mailed Defendant a copy of the Rule 55(a) Request for Entry of Default [Doc. #43-2]. Thus, on several occasions, Defendant has been provided with notice of this proceeding and of the risks for failing to appear. Accordingly, Defendant's decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D.Cal.2001) (reasoning that excusable neglect is not present when Defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7. **The policy considerations**

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendant's failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiff default judgment. Absent a judgment by default, Plaintiff will not be made whole and has no

mechanism to prevent further infringement of its copyright by this same Defendant. In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiff a default judgment against Defendant.

DAMAGES

**A. Plaintiff is entitled to Statutory Damages for Willful Copyright Infringement**

Plaintiff seeks to receive statutory damages of $20,000.00 for Defendant's at least four infringements of the Work. Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiff is entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no more than $150,000.00 per work for Defendants' violations of the Copyright Act. 17 U.S.C. § 504(c)(1) and (2).

In determining an amount of statutory damages for copyright infringements, district courts will generally consider: 1) the nature of the infringement; 2) the defendant's purpose and intent; 3) the profit that the defendant reaped, if any, or the expense that the defendant saved; 4) the revenue lost by plaintiff as a result of the infringements; 5) the value of the copyrights; 6) the duration of the infringements; 6) the defendant's continuation of infringement after notice or

knowledge of copyright claims; and, 7) the need to deter this defendant and other potential infringers. *Tenenbaum*, 719 F.3d at 71.

The nature of the infringement by Defendants includes a total of at least four direct infringements of the Work (one copy made for Defendant, three copies distributed to others). The Defendant's purpose and intent were to illegally make a copy of the movie and share the copies with others.

The profit that the Defendant reaped was not in the form of actual cash payments, but in the form of trade – with the barter providing more stolen copyrighted works. The Defendant, having downloaded over 750 items via BitTorrent, clearly profited from seeding the Work.

The Work was among one of the top 10 pirated works during the week of or very near Defendant's infringements. [Doc. #48-1]. The Defendant, as a member of the swarm, contributed to this massive piracy. Thus, the revenue lost by Plaintiff as a result of the infringements is substantial. Indeed, the massive piracy of the Work is indicative of the high value of the copyrights.

The copyright in the Work was registered on August 29, 2016, which is prior to the Defendant's infringements. [Doc. #24-5]. Similar to other major motions pictures, the Work includes a copyright notice. Thus, the Defendant had actual and constructive notice of Plaintiff's copyright claims.

Despite the Defendant's contribution to the massive piracy of the Work and having downloaded over 750 items via BitTorrent, the Court finds that Plaintiff's request for a statutory damage award of $20,000.00 is excessive and that an award of $750 is consistent with a number of district courts within the Ninth Circuit concluding that $750 is sufficiently punitive to deter the conduct given the low cost to download or rent movies, among other reasons. The Court finds that an award of statutory damages of $750.00 is appropriate.

**B. <u>Plaintiff is entitled to injunctive relief.</u>**

Plaintiff requests that the Court: grant its request for injunctive relief, permanently barring Defendant from directly and contributorily infringing Plaintiff's copyright in the Work; issue an Order requiring Defendant to destroy all illegal copies of the copyrighted movie, including electronic files and copies transferred onto any physical medium or device in his possession, custody, or control; order Defendant to delete the software used to make or distribute copies of Plaintiff's copyrighted material or to exchange unlicensed content using the BitTorrent protocol; and to refrain from knowingly and willfully using BitTorrent or the Internet for copying or downloading content in violation of U.S. copyright law in the future.

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. *See* 17 U.S.C. §502(a)(2) ("Any court having

jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . .of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . ." 17 U.S.C. § 503(b).

Permanent injunctions are commonplace in these cases: "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir.1993). Moreover, irreparable harm is presumed in copyright infringement cases on a showing of success on the merits. See *A&M Records, Inc. v. Napster, Inc.*, 114 F.Supp.2d 896, 925(N.D.Cal.2000) reversed in part on other grounds, citing *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109 (9th Cir.1998); see also *Princeton Univ. Press v. Michigan Document Serv., Inc.*, 99 F.3d 1381, 1392–93 (6th Cir.1996) (holding the weight of authority supports the extension of injunctive relief to future work). Given this statutory framework, Courts routinely issue injunctive relief as part of a default judgment where, as here, an online media distribution system was used to download and distribute copyrighted works without permission. See, e.g., *Warner Bros. Records, Inc. v. Novak*, 2007 WL 1381748 at *2-3 (D. N.J. 2007) (issuing a permanent injunction

enjoining Defendant from infringing on plaintiff's copyrighted recordings in the future).

Here, Plaintiff has demonstrated that there is a high likelihood of continuing violations of Plaintiff's copyright if Defendant is not enjoined. Because of the way the BitTorrent protocol operates, every downloader of the content is also an uploader; thus, the distributed nature of BitTorrent leads to a rapid, almost viral, spreading of a file through peer users. [Doc. #24 ¶¶ 44-48]. This also means that every user who has a copy of the infringing material may also be a source for later downloads of the material, so long as the first user remains part of the BitTorrent network and is online at the time a subsequent user requests the file. [Id.] Such widespread and uncontrolled infringement is, by its very nature, irreparable. Accordingly, unless this Court grants an injunction, Defendant will likely be the source for others to download the Work over and over. Granting an injunction is the only way to prevent further infringement. Nor will Defendant be harmed if he is enjoined from this conduct in the future—only illegal conduct will be prohibited.

Therefore, the Court finds that Plaintiff is entitled to injunctive relief prohibiting Defendant from directly and contributorily infringing Plaintiff's copyrighted Work in the future. Additionally, the Court recommends that Defendant be ordered to destroy all copies of the Work that he made or used in violation of Plaintiff's copyright.

## C. Plaintiff is entitled to an award of attorneys' fees.

Pursuant to 17 U.S.C. § 505, this Court may award reasonable attorneys' fees and costs incurred in litigating a copyright infringement action—and courts typically do make such awards. "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989) (emphasis added).

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The Court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the Court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See *Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is

13

> fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (quoting *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir. 1988), *reinstated,* 886 F.2d 235 (1989), cert. denied, 494 U.S. 1091, 110 S. Ct. 1838, 108 L. Ed. 2d 966 (1990)), and (5) the contingent nature of the fee agreement," *City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992). Once calculated, the "lodestar" is presumptively reasonable. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987); see also *Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. See *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. Although attorneys are required to provide evidence that the rate charged is reasonable, *see Jordan v.*

*Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987), this Court is better aware of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys.

The Court has determined that the appropriate award of attorneys' fees and tax in this matter is $5,321.58.

**<u>RECOMMENDATION</u>**

Based upon the foregoing the Court RECOMMENDS that Plaintiff's Motion be GRANTED IN PART and that default judgment enter as follows:
1) award Plaintiff $750 in statutory damages; 2) award Plaintiff $5,321.58 in attorneys' fees and general excise tax; 3) permanently enjoin Defendant from directly, indirectly, or contributorily infringing Plaintiff's rights in the work Mr. Church, including without limitation by using the Internet to reproduce or copy Mr. Church, to distribute Mr. Church, or to make Mr. Church available for distribution to the public, except pursuant to lawful written license or with the express authority of Plaintiff; and 4) order Defendant to destroy all unauthorized copies of Mr. Church in his possession or subject to his control.

IT IS SO FOUND AND RECOMMENDED

DATED: Honolulu, Hawaii, August 25, 2017.



_____
Kevin S.C. Chang
United States Magistrate Judge

COOK PRODUCTIONS, LLC v. STANLEY SZERLIP; CV 16-00637 HG-KSC; FINDINGS AND RECOMMENDATION TO PARTIALLY GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT STANLEY SZERLIP